In re SPILLER et al.

(District Court, D. Massachusetts. March 9, 1916.)

No. 22516.

1. BANKRUPTCY ⊚⟶374—COMPOSITION—OFFER AFTER DISCHARGE.

The facts that a bankrupt has received his discharge in due course and that a first dividend has been paid by the trustee do not prevent the bankrupt from offering composition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 575; Dec. Dig. ⊚⟶374.]

2. BANKRUPTCY ⊚⟶381—COMPOSITION—HEARING AND DETERMINATION OF APPLICATION,—ASSENT OF CREDITORS.

The assent of 90 per cent. of a bankrupt's creditors to an offer of composition was evidence prima facie that the composition was for the best interests of creditors, and the burden was on the objecting creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 591; Dec. Dig. ⊚⟶381.]

3. BANKRUPTCY ⊚⟶381—COMPOSITION—HEARING AND DETERMINATION OF APPLICATION—ADEQUACY OF OFFER.

That it was conceded that a bankrupt estate, if fully administered, would pay more than 75 per cent. of the claims of creditors, and that it was probable that it would pay a still larger percentage, was not ground for denying confirmation of a composition offer of 70 per cent., to which 90 per cent. of the creditors had assented.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 591; Dec. Dig. ⊚⟶381.]

4. BANKRUPTCY ⊚⟶382—COMPOSITION—HEARING AND DETERMINATION OF APPLICATION—OMITTED CLAIMS.

On a hearing on an offer of composition, the bankrupt's counsel admitted that a claim had been omitted from the schedules, and the objecting creditors thereupon contended that the referee had no jurisdiction to proceed because the schedules were incomplete and the deposit did not cover all existing claims. The referee, however, proceeded, and made a report, accompanied by the evidence and exhibits before him. Held that, if the objection could be insisted upon by any creditor except those omitted, still the statute (Bankr. Act July 1, 1898, c. 541, §§ 7a, 12a, 39a [2], 30 Stat. 548, 549, 555 [Comp. St. 1913, §§ 9591, 9596, 9623]) and General Order 9 (89 Fed. vi, 32 C. C. A. xiii) did not so limit the general discretionary power of the court in matters of reference to and reports from referees as to prevent it from hearing and deciding the case on the referee's report.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 592; Dec. Dig. ⊚⟶382.]

In Bankruptcy. In the matter of Joseph B. Spiller and others, bankrupts. On report of referee respecting an offer of composition. Report and offer confirmed.

Swift, Friedman & Atherton, of Boston, Mass., for bankrupts.

Phipps, Durgin & Cook, of Boston, Mass., for objecting creditors.

MORTON, District Judge. The bankrupts were adjudicated. A trustee was appointed. The liquidation of the estate was begun, and a dividend of 25 per cent. was paid to creditors. The bankrupts applied for and received their discharges. Thereafter they filed an offer in composition to pay 45 per cent. in addition to the 25 per cent. al-

ready paid by the trustee, making 70 per cent. in all. This offer was referred to the referee, who has reported in favor of confirming it. With the application for the confirmation of the composition, the bankrupts filed a petition for the revocation of their discharges.

Three questions are presented: First. Was it open to the bankrupts to offer composition after having received their discharges? Second. Is the composition offer for the best interests of the creditors? Third. Did the referee have power to hear and report on the matter? No objections on other grounds are now urged.

[1] As to 1: Was it open to the bankrupts to offer composition after having received their discharges? The present act explicitly allows composition after adjudication. Section 12a. At that time, a bankrupt has no longer any legal interest in his estate; it has, by the adjudication, become the property of his creditors. Composition proceedings under such circumstances are, in effect, an offer by the bankrupt to repurchase his property from the trustee. That is what they amount to in the present case; and they are not on that account unpermissible.

If the bankrupt, at the time of making the offer, has not received his discharge, the confirmation operates as one, and secures to him both his former property, and his discharge. In the present case the bankrupts received one of these before making the offer. It is difficult to see why that fact should restrict their right to redeem their property. The creditors could have objected to the discharges, but did not, and the grant of them completed one of the two principal branches of the case. The creditors could still object to a disposal of the estate in accordance with the offer in composition upon any ground specified in the statute. The fact that the discharges were obtained in the usual course seems to me no sufficient reason for denying the right to settle the estate through proceedings in composition. I therefore agree with Mr. Referee Gibbs that this objection is not sound and cannot be sustained. If I thought otherwise, I should allow the petition to revoke the discharges; but I see no necessity for such action.

[2] As to 2: The objecting creditors contend that the offer in composition is not for the best interest of the creditors, and that the referee's finding to the contrary is plainly erroneous, and if confirmed is an unconstitutional taking of property. About 90 per cent. of the creditors have assented to the offer. "Such approval is evidence, prima facie, that the composition is for the best interests of the creditors; and the burden is upon those who attack the composition." Hale, J., Re Hoxie (D. C. Me.) 25 Am. Bankr. Rep. 32, 34, 180 Fed. 508. See, too, Adler v. Jones, 6 Am. Bankr. Rep. 245, 109 Fed. 967, 48 C. C. A. 761.

[3] The referee has found that "the assets of the bankrupts were of a value in excess of the amount required to pay the creditors 70 cents on the dollar"; and it was conceded by counsel for the bankrupts at the hearing before me that upon full administration the creditors would receive as much as 75 per cent.—i. e., 5 per cent. more than the offer. The referee has not reported how much more than

70 per cent. the creditors would receive upon full administration; and I am not able to form a satisfactory conclusion upon that point from the evidence before me. The estate would in all probability pay more than 75 per cent.—just how much more is somewhat problematical, depending upon the collectability of the accounts receivable and the amount which can be realized for certain equities in real estate, and also upon whether a verdict for a substantial sum which has recently been rendered against one of the bankrupts in the state courts is affirmed on appeal. On the other hand, payments made in due course will, as the referee reports, be considerably delayed.

The mere fact that the estate will on full administration pay more to the creditors than the offer in composition is not sufficient reason for refusing confirmation. Other considerations than the mere amount of the dividends may properly be considered by creditors in determining whether to accept or reject the offer. They have, within fair limits, a right to decide in favor of an immediate payment, as against a postponed and uncertain one, probably of larger amount. A decision to that effect, honestly made by an overwhelming majority of the creditors, in the exercise of their business judgment, ought not to be overridden, unless justice to the objecting minority plainly requires such action.

The test by which the adequacy of the offer is to be determined has been thus stated:

"If the court is satisfied upon the hearing that the composition offered would pay creditors *very considerably less* [italics mine] than they might reasonably be expected to realize in the administration of the assets in due course, then the composition is not for the best interests of creditors." Day, J., Adler v. Jones, 6 Am. Bankr. Rep. 245, 248, 109 Fed. 969, 48 C. C. A. 763 (C. C. A. 6th Circuit).

Some of the assenting creditors doubtless were influenced by the hope of doing further business with the bankrupts if the composition shall go through; but I cannot say, upon the case before me, that this motive, which to some extent at least is a legitimate one, is so extensive and dominant as to justify me in disregarding the views of the majority, nor that the offer is "very considerably less" than would probably be realized on full administration. Upon this question, also, I agree with the conclusion of the referee, and am satisfied that the offer is for the best interests of creditors.

[4] At the hearing before me counsel entered into an oral stipulation, a copy of which from my notes is hereto annexed. In substance this stipulation is that at the first hearing before the referee counsel for the bankrupts admitted that there had been omitted from the schedules a claim of about $4,500 against two of the bankrupts, and that thereupon the objecting creditors contended that the referee had no jurisdiction to proceed because the schedules were incomplete and the deposit did not cover all the existing claims. The referee made no explicit ruling on the objection, but he did proceed to hear and report on the case.

It is now urged by the objecting creditors that, upon it appearing that there were claims not scheduled, the referee lost jurisdiction un-

til the schedules had been amended and a deposit made, or a waiver filed, to cover the added indebtedness. Sections 12a, 7a, 39a (2), and General Order 9 (89 Fed. vi, 32 C. C. A. xiii) are referred to in support of this contention. No decision on the point has been called to my attention.

If such an objection can of right be insisted on by any creditor except those so omitted—which I doubt—I am of opinion that the sections and order mentioned do not so limit the general discretionary power of the court in matters of reference to and reports from referees as to prevent me from hearing and deciding the case on the present report of the referee, accompanied as it is by the evidence and exhibits before him.

Report of the referee confirmed. Offer in composition confirmed.

In addition to what appears in the record, it is stipulated and agreed between the parties as follows:

On January 14, 1916, the day of the first hearing before the referee, Mr. Friedman, counsel for the bankrupts, stated to the referee that there was a claim of about $4,500 against Spiller and McCandlish which had been omitted from the schedules, it being in favor of Welch or Cotting, trustees. (See Exhibit 6.) Thereupon Mr. Cook, counsel for the objecting creditors, objected to the referee's going on with the case, on the ground that he had no jurisdiction to do so, because the schedule was admittedly incomplete and the deposit did not cover the entire indebtedness. The referee did not rule on the objection explicitly, but proceeded with the case. On the same day, and at the same hearing, Mr. Friedman also stated that he would admit that the estate, if fully administered in the ordinary course of bankruptcy, would pay 75 per cent. to general unsecured partnership creditors. The referee took notice of that statement, and said that it was a matter of calculation to see that the estate would pay more than 70 per cent.

The foregoing stipulation is to be considered part of the record in the case.